UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

JAMES EMERSON DAVIS,                                    No. 16-10249

                 Debtor(s).
_____/

Memorandum re Plan Confirmation
_____

I. Introduction

      In 2006, Chapter 11 debtor James Davis borrowed $461,000 from the First National Bank of Arizona secured by his real property at 12481 Moonbeam Meadow Way, Potter Valley, California. He lived there at the time, but does not currently reside on the property.

      First National Bank of Arizona endorsed the note in favor of First National Bank of Neveda, which endorsed the note in favor of Countrywide Home Loans, Inc., which endorsed the note in blank. The note is now in the possession of CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-3, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE c/o SPECIALIZED LOAN SERVICING, LLC (hereinafter "SLS"), loan servicer for U.S. Bank. Davis has proposed a plan of reorganization to which SLS objects.

      Before Davis filed his bankruptcy petition, he had sued U.S. Bank in state court and lost. Basically, Davis argued there that U.S. Bank was obliged to prove that it was a holder in due course of its note and had failed to do so. Davis filed an adversary proceeding in this court alleging exactly the

1

same claims as he had raised in state court, arguing that because he had appealed the state court judgment he was free to re-litigate in this court. The court rejected Davis' attempt to avoid the consequences of his state court action, abstaining in favor of final resolution by the state courts. Davis then objected to SLS's claim, again raising the same meritless arguments. The court overruled the objection and allowed the claim.

Davis has now proposed a plan of reorganization, to which SLS objects. The plan has undergone several modifications since the first version, which contained provision for payments due to U.S. Bank to be instead remitted to the Federal Deposit Insurance Corporation pending the outcome of his state court appeal, notwithstanding that the state court judgment against him was not stayed and SLS had an allowable claim. The plan, as subsequently amended, no longer contains the FDIC language and calls for payments to SLS. It bifurcates the SLS secured claim into principal of $437,241 to be paid over 30 years with 3 ½% interest and accrued interest of $169,324 to be paid with no interest over 15 years. It does not allow for payment of any attorneys' fees he may owe if the state court judgment against him becomes final. The three issues implicated by the plan are good faith (11 U.S.C. §1129(a)(3)), feasibility ( §1129(a)(11)), and interest rate (§1129(b)(2)(A)(i)(II)). The court addresses each of these issues separately below.

II. Good Faith

The court has had a difficult time finding that Davis commenced this case or filed his plan in good faith. After losing in state court, he attempted to re-litigate the same lawsuit in this court twice, once by filing a new adversary proceeding and once by objecting to the claim on exactly the same grounds, which seem to this court (and the state court) to be completely without merit and contrary to well-established law without a coherent argument for change of the law. It seemed to the court that Davis' plan was to embroil U.S. Bank in as much litigation as possible, after which he would merely walk away from his property if he lost.

Davis argues that he has an excellent chance for prevailing on appeal because the state court

2

1   cited a line of case holding that a home loan borrower has no standing to attack the validity of the
2   transfer of the note.  Those case were abrogated by *Yvanova v. New Century Mortgage Corp.,* 62
3   Cal.4th 919 (2016).  While this court would not presume to tell an appellate court how to rule, success
4   on appeal is nowhere near as assured as Davis thinks.

5      First, Davis did not lose in state court because a demurrer was sustained; the case was decided
6   on summary judgment.  In addition to finding that Davis had no standing, the state trial court found no
7   basis for the transfer of the note to be void and specifically found "USB has established by competent
8   admissible evidence that the original note and deed of trust have been transferred to it through a series
9   of recorded assignments."  Since an appellate court reviews the granting of summary judgment *de*
10  *novo* and since the state trial court based its decision on the merits as well as on procedural grounds, it
11  would not be a surprise if Davis lost in state appellate court even though the procedural grounds relied
12  upon by the trial court were no longer good law.

13     Second, the court in *Yvanova* made it clear that its ruling was a narrow one and only granted
14  standing to a borrower to contest a completely void assignment, not one merely voidable.  It noted that
15  the borrower still had to prove that the assignment is void.  62 Cal. 4th at 924.  It is no support for
16  Davis' position, as Davis has not even alleged anything which would render the assignment to U.S.
17  Bank void, nor does it support Davis' argument that the Bank bears the burden of proof.

18     However, when Davis testified on the stand he appeared to actually believe he was going to
19  prevail in state court.  Since SLS's cross examination was ineffectual[1], the court will reluctantly find

---

[1]
| Counsel: | Do you feel that you have filed this bankruptcy in good faith? |
| Debtor: | Absolutely. |
| Counsel: | Do you feel that you have filed this bankruptcy for the sole purpose of reorganizing debt? |
| Debtor: | Yes. |
| Counsel: | And do you believe that you filed your plan in good faith? |
| Debtor: | Absolutely. |
| Counsel: | And the amended plan was filed in good faith? |
| Debtor: | Yes. |
| Counsel: | I have no more questions.  Thank you. |

3

that the plan has been filed in good faith.

III. Interest Rate

Davis' original plan called for interest at the rate of 3 ½ % percent on the principal portion of his obligation. Sensing that the court found this rate nowhere near appropriate, his counsel orally amended the plan to 5%, which is still not sufficient and not based on any competent evidence. Davis' "expert" provided no justification for a Chapter 11 cramdown interest rate; the court would certainly have granted a motion to strike his testimony on the grounds that he was not qualified to be an expert in a Chapter 11 case, but counsel for SLS did not make such a motion or even examine him on his qualifications. Nonetheless, the court is not obligated to believe unqualified and incredible expert testimony.

Davis' expert never mentioned *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), even though that case forms the basis for fixing a proper interest rate under §1129(b)(2)(A)(i)(II) when, as here, there is no efficient market rate. See *In re Tapang,* 540 B.R. 701, 707-08 (Bkrtcy.N.D.Cal. 2015), and cases therein cited. Even without credible expert testimony, the court can easily identify several risk factors, including lack of equity, a 30-year term of repayment, and Davis' litigious nature. A 5% rate is clearly insufficient.

IV. Feasibility

Davis argues that his monthly operating reports are incorrect because of unrealistic U.S. Trustee guidelines, that he has income of over $10,000 per month, and can afford the payments he has proposed. The court cannot so find, based on the conflicting operating reports and the fact that he will need to increase his payments substantially in order to pay a proper interest rate. Feasibility can only be determined once Davis' income is unambiguously determined and his payments under his plan are

4

fixed.

V. Conclusion

Though difficult, the court can find that Davis has proposed his plan in good faith. His challenge is to propose a proper rate of interest and then show that he can afford to make the required payments. This will require both a real expert to address *Till* risk factors and amendment of his monthly operating reports to reflect real and accurate information even if that is contrary to his interpretation of U.S. Trustee guidelines. The court may allow him a brief additional time to amend his reports and propose and amended plan, provided that interim payments are made to SLS.

For the reasons stated above, confirmation of Davis' plan will be denied without prejudice. Counsel for SLS shall submit an appropriate form of order.

Dated: December 5, 2016

Alan Jaroslovsky
U.S. Bankruptcy Judge

5